## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AUTO CLUB FAMILY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>BLAKELUND MORONEY et al., heirs at law to KEVIN P. MORONEY, deceased,<br><br>and<br><br>SUZANNE ESTRELLA and BENJAMIN ESTRELLA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 2:16-cv-02789-JAR-JPO |

## MEMORANDUM AND ORDER

This case involves an insurance-coverage dispute arising from events that transpired on August 7, 2014.  On that date, Conner Estrella, a minor, was driving his parents' vehicle when he struck and killed a pedestrian, Kevin P. Moroney.  In consolidated litigation pending in the District Court of Johnson County, Kansas, Kevin Moroney's heirs—Blakelund Moroney, Brenton Moroney, Brittany Moroney, and Brogan Moroney (collectively "Defendants")—claim damages resulting from Benjamin and Suzanne Estrella's alleged negligent entrustment of their vehicle to their son, Conner.[1]  Plaintiff Auto Club Family Insurance Company, the provider of the Estrellas'

---

[1] Although Benjamin, Suzanne, and Conner Estrella are also named as defendants, they have never appeared in this case.

homeowner's insurance policy, filed this declaratory judgment action on November 30, 2016.[2]  Plaintiff seeks an order declaring that pursuant to the homeowner's policy at issue, it has no obligation to defend the Estrellas, or to indemnify them for damages that may be awarded to Defendants, in the underlying Johnson County litigation.  Defendants filed an Answer and Counterclaim on January 19, 2017, seeking a declaratory judgment in their favor on the insurance-coverage issue.[3]

Now before the Court are the parties' cross-motions for summary judgment (Docs. 14 and 15).  The motions are fully briefed and the Court is prepared to rule.  As explained more fully below, the Court denies Plaintiff's motion for summary judgment and grants Defendants' motion for summary judgment.

## I.      Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[4]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party.[5] The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6]  In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the

---

[2] Doc. 1.

[3] Doc. 9.

[4] Fed. R. Civ. P. 56(a).

[5] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S 317, 324 (1986); *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex*, 477 U.S. at 322–23).

other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

If the moving party properly supports its motion, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[8] The non-moving party may not simply rest upon its pleadings to satisfy its burden.[9] Rather, the non-moving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[11]  "Where, as here, the parties file cross motions for summary judgment, [the court is] entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[12]

---

[7] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[8] *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[9] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[10] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[11] *Adams*, 233 F.3d at 1246; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[12] *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citing *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 691–92 (10th Cir. 1981)).

## II.    Uncontroverted Facts

In this case, the parties agree that the issue of insurance coverage is a question of law appropriate for the Court to decide on summary judgment, and have agreed to the following undisputed material facts.[13]

Defendants filed a Petition in the District Court of Johnson County, Kansas, against Conner, Suzanne, and Benjamin Estrella for the wrongful death of Kevin Moroney.[14]  Brenton Moroney, as special administrator of his father's estate, also filed a survivorship claim against Conner, Suzanne, and Benjamin Estrella in the same court.[15] Those two lawsuits have now been consolidated into Case No. 15CV-00521.[16]

Defendants allege in the consolidated suits that on August 7, 2014, Connor Estrella, a minor, consumed alcohol and possibly other intoxicating substances at a party and then drove home just before midnight.[17]  They allege that on his way home, Conner lost control of the vehicle he was driving and struck Kevin Moroney, who was standing outside his home, causing fatal injuries.[18]  Conner was subsequently charged in the District Court of Johnson County, Kansas with one count of involuntary manslaughter while driving under the influence.[19]

---

[13] For purposes of this Order, the Court has considered only Facts 1–17 as agreed upon by the parties.  *See* Doc. 14 at 5–10; Doc. 15 at 2–7. Although Defendants appear to have included additional facts in their Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment (Doc. 15 at 9–10), the Court has disregarded those facts as not agreed upon by the parties or irrelevant to the determination of the insurance-coverage issue in this case.

[14] Doc. 14 at 5, ¶1; Doc. 15 at 2, ¶1.

[15] Doc. 14 at 5, ¶2; Doc. 15 at 2, ¶2.

[16] Doc. 14 at 5, ¶3; Doc. 15 at 3, ¶3.

[17] Doc. 14 at 5, ¶4; Doc. 15 at 3, ¶4.

[18] Doc. 14 at 5, ¶5; Doc. 15 at 3, ¶5.

[19] Doc. 14 at 7, ¶11; Doc. 15 at 4, ¶11.

In the consolidated Johnson County suits, Defendants claim damages resulting from the alleged negligent entrustment by Benjamin and Suzanne Estrella of their vehicle to their son.[20]  They contend that the Estrellas knew or should have known that Conner was likely to be an incompetent, irresponsible, or reckless driver by virtue of his past criminal record and substance abuse history.[21]  Defendants allege that as a result of Benjamin and Suzanne Estrella negligently entrusting their vehicle to Conner, Kevin Moroney was severely injured and subsequently died, and that Defendants have suffered pecuniary and non-pecuniary losses, harms, and damages as a result.[22]

Plaintiff had issued a motor-vehicle liability policy to Benjamin and Suzanne Estrella, providing bodily-injury liability coverage in the amount of $250,000 "per person" and $500,000 "per accident" insuring the vehicle operated by Conner at the time of the accident at issue.[23]  Pursuant to that policy, Plaintiff provided the Estrellas with a defense and paid Defendants the $250,000 policy limit regarding the wrongful-death and survivorship claims filed in the District Court of Johnson County, Kansas, as well as Defendants' settlement of all claims against Conner.[24]

Plaintiff had also issued a "Premier" Homeowner's Policy of Insurance ("the Policy") to Benjamin and Suzanne Estrella.[25]  Benjamin, Suzanne, and Conner Estrella

---

[20] Doc. 14 at 6, ¶6; Doc. 15 at 3, ¶6.

[21] Doc. 14 at 6, ¶9; Doc. 15 at 4, ¶9.

[22] Doc. 14 at 7, ¶10; Doc. 15 at 4, ¶10.

[23] Doc. 14 at 7, ¶12; Doc. 15 at 5, ¶12.

[24] Doc. 14 at 7, ¶13; Doc. 15 at 5, ¶13.

[25] Doc. 14 at 8, ¶14; Doc. 15 at 5, ¶14.

were Insureds under the Policy at the time of the accident at issue.[26]   The Policy provides

limits of $500,000 for Coverage E – Personal Liability – Each Occurrence.[27]

     The parties cite several provisions of the Policy as being dispositive of the

insurance-coverage issue in this case.   The parties first cite to several provisions in the

"Definitions" section:

### DEFINITIONS

In this policy, **you** or **your** means any **insured** named in the declarations.   If there is only one **insured** named in the declarations and the **insured** is a natural person, **you** or **your** includes that person's spouse if that spouse lives in the same household on a regular, continuous and permanent basis.  **We**, **us**, and **our** means the Auto Club Family Insurance Company.

**Bodily injury** – means bodily harm, bodily sickness or bodily disease, including death that results.  **Bodily injury** does not include damages for mental anguish, emotional distress or similar damages unless such damages are directly caused by actual physical injury to the person claiming damages.

**Insured** – means **you** and people who live in the **residence premises** on a regular, continuous and permanent basis who are:

1.   **Your** relatives by blood, marriage or adoption.

2.   Any other person under the age of 21 who is in the care of **you** or any person included under 1. above.

**Motorized vehicle** – means a self-propelled land or amphibious vehicle, regardless of method of surface contact.  **Motorized vehicle** includes parts and equipment.[28]

    The parties next cite to the provision on covered losses in Section II of the Policy:

### SECTION II – LIABILITY COVERAGES

---

[26] Doc. 14 at 8, ¶15; Doc. 15 at 5, ¶15.

[27] Doc. 14 at 8, ¶16; Doc. 15 at 6, ¶16.

[28] Doc. 14 at 8, ¶17; Doc. 15 at 6, ¶17 (emphasis in original).

**COVERAGE E – PERSONAL LIABILITY**

**COVERAGE F – MEDICAL PAYMENTS TO OTHERS**

**WHAT LOSSES ARE COVERED – COVERAGE E**

1. **We** will pay for actual damages that an insured is legally obligated to pay due to **bodily injury** and **property damage** caused by an **occurrence** to which this coverage applies.[29]

Finally, the parties cite two relevant exclusions from coverage under the Policy:

**SECTION II – LIABILITY COVERAGES**

**WHAT LOSSES ARE NOT COVERED – EXCLUSIONS –**

**SECTION II**

1. Under SECTION II **we** do not cover:

   f. **Bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of **motorized vehicles,** including trailers of any type.

   i. **Bodily injury** or **property damage** arising out of any **insured's**:

      (1) entrustment to any other person;

      (2) vicarious parental liability, whether or not imposed by law, for the actions of a child or minor relating to the operation, maintenance, loading or unloading; or

      (3) supervision of any other person in the operation, maintenance, loading or unloading;

      of any **motorized vehicle**, including trailers of any type, or of any watercraft or aircraft not covered under SECTION II.[30]

---

[29] Doc. 14 at 8, ¶17; Doc. 15 at 6, ¶17 (emphasis in original).

[30] Doc. 14 at 8, ¶17; Doc. 15 at 6, ¶17 (emphasis in original).

Although the parties do not cite it in their briefs, Section II of the Policy also contains a severability clause:

> 6. Severability of Insurance
>
> This insurance applies separately to each **insured**, however, this condition will not increase **our** limit of liability for any one **occurrence**.
>
> This severability of insurance provision in no way alters or affects any provision of the policy indicating that it applies to "any **insured**". Any limiting or exclusionary provision in the policy indicating that it applies to "any **insured**" means that such limiting or exclusionary provision is applicable as to any **insured** under this policy. Where **we** use the phrase "any **insured**", **we** intend that such provisions not be limited to any one **insured** and that such provisions are applicable to any **insured** under the policy.[31]

## III.    Discussion

The parties have filed cross-motions for summary judgment, each party arguing that under the terms of the Policy, judgment should be awarded in their favor. Plaintiff argues that the Policy's negligent-entrustment exclusion expressly excludes coverage for Defendants' claim that Benjamin and Suzanne Estrella negligently entrusted their vehicle to their son, Conner. Alternatively, Plaintiff argues that the motor-vehicle exclusion excludes coverage because the damages alleged by Defendants arose out of the use of a motor vehicle. Defendants argue that the negligent-entrustment exclusion is ambiguous and should therefore be construed in their favor as not excluding coverage for their negligent-entrustment claim. Defendants further argue that Kansas law does not recognize Plaintiff's position that the motor-vehicle exclusion bars coverage.

---

[31] Doc. 1, Ex. 3 at 66 (emphasis in original).

The interpretation and legal effect of an insurance contract is a matter of law to be determined by the court.[32]  In construing an insurance policy, a court must consider the instrument as a whole and interpret the policy language in such a way as to give effect to the intent of the parties.[33]  If the policy language is clear and unambiguous, the court must interpret it in its "plain, ordinary, and popular sense."[34]  A policy is ambiguous "when it contains language of doubtful or conflicting meaning based on a reasonable construction of the policy's language."[35]

"Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning."[36]  Whether policy language is ambiguous is a question of law, and the proper test is "not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean."[37]  An insurer has a "duty to define limitations to an insured's coverage in clear and explicit terms.  To restrict or limit coverage, an insurer must use clear and

---

[32] *Gerdes v. Am. Family Mut. Ins. Co.*, 713 F. Supp. 2d 1290, 1295 (D. Kan. 2010) (quoting *Goforth v. Franklin Life Ins. Co.*, 449 P.2d 477 (Kan. 1969)); *Am. Media, Inc. v. Home Indem. Co.*, 658 P.2d 1015, 1018 (Kan. 1983).

[33] *Magnus, Inc. v. Diamond State Ins. Co.*, 101 F. Supp. 3d 1046, 1054 (D. Kan. 2015) (citing *Brumley v. Lee*, 963 P.2d 1224, 1226 (Kan. 1998)); *Am. Family Mut. Ins. Co. v. Wilkins*, 179 P.3d 1104, 1109 (Kan. 2008) (citation omitted); *O'Bryan v. Columbia Ins. Grp.*, 56 P.3d 789, 792 (Kan. 2002) (citing *Farm Bureau Mut. Ins. Co. v. Horinek*, 660 P.2d 1374 (Kan. 1983)).

[34] *O'Bryan*, 56 P.3d at 792 (citing *First Fin. Ins. Co. v. Bugg*, 962 P.2d 515 (Kan. 1998)); *Magnus*, 101 F. Supp. 3d at 1054.

[35] *Kemper Ins. Cos. v. Weber*, 168 P.3d 607, 610 (Kan. Ct. App. 2007).

[36] *Wilkins*, 179 P.3d at 1109–10 (quoting *O'Bryan*, 56 P.3d at 792–93).

[37] *Id.* at 1110 (quotation omitted).

9

unambiguous language."[38]  If the policy language is ambiguous, then it must be construed in favor of the insured.[39]

### A.      Exclusion for Negligent Entrustment

The Court begins by construing Section II.1.i(1) of the Policy, which on its face excludes coverage for certain damages arising out of negligent entrustment.  Plaintiff first argues that the Policy excludes coverage for Defendants' claim that Benjamin and Suzanne Estrella negligently entrusted their vehicle to Conner Estrella because Section II.1.i(1) explicitly excludes coverage for injuries arising from negligent entrustment.[40] The exclusion states that the Policy does not cover "[b]odily injury or property damage arising out of  . . . any insured's entrustment to any other person,"[41] and because Benjamin and Suzanne Estrella entrusted their vehicle to Conner, Plaintiff argues that the Policy does not cover any resulting damages.[42]

Defendants argue that because "any other person" is juxtaposed against the opening phrase "any insured," the plain meaning of "any other person" is any person other than any insured.[43]  Because Conner was insured under the Policy, Defendants reason, the exclusion for negligent entrustment does not apply and Defendants are entitled to coverage for their claim.[44]  Defendants alternatively argue that the language is

---

[38] *Weber*, 168 P.3d at 611 (citations omitted).

[39] *Magnus*, 101 F. Supp. 3d at 1054 (citing *Brumley v. Lee*, 963 P.2d 1224, 1226 (Kan. 1998)); *O'Bryan*, 56 P.3d at 793 (citing *Catholic Diocese of Dodge City v. Raymer*, 840 P.2d 456, 459 (Kan. 1992)).

[40] Doc. 14 at 17.

[41] *Id.* at 14.

[42] *Id.* at 17.

[43] Doc. 15 at 16–17.

[44] Doc. 19 at 4.

ambiguous and should therefore be construed in Defendants' favor.[45]  Defendants argue

that this language is ambiguous because "any other person" could refer to any person

other than an insured, any person other than the specific insured accused of negligent

entrustment, or even any person other than the named insureds in the Policy, in this case

Benjamin and Suzanne Estrella.[46]

Plaintiff responds that Defendants are trying to create ambiguity where none

exists, and that the disputed language unambiguously excludes coverage for bodily injury

or property damage arising out of *any one of the insured's* entrustment of the vehicle to

any other person.[47]  Furthermore, Plaintiff argues, the intent of the Policy is to exclude

claims of negligent entrustment involving motor vehicles because those claims are

covered under a separate motorist policy.[48]

After thoroughly analyzing the disputed language in the context of the Policy as a

whole, the Court finds that the Policy's negligent-entrustment exclusion is ambiguous

and should therefore be construed in Defendants' favor to cover Defendants' claim of

negligent entrustment against Benjamin and Suzanne Estrella.  Starting with the phrase

"any other person," Merriam Webster defines "other" as "(1)(a) being the one (as of two

or more) remaining or not included, (b) being the one or ones distinct from that or those

first mentioned or implied."[49]  In *Riley v. Allstate Insurance Co.*,[50] the Kansas Court of

Appeals construed the term "any other person" in a Kansas statute and held that the plain

---

[45] Doc. 15 at 17–18.

[46] *Id.* at 14.

[47] Doc. 17 at 3.

[48] *Id.* at 4.

[49] Doc. 15 at 14.

[50] 281 P.3d 591, 596 (Kan. Ct. App. 2012).

meaning of the statute dictated that "any other person" be read with the opening phrase referring to the "owner of a motor vehicle" so that "any other person" meant "a person *other than the owner of the motor vehicle.*"[51]

Plaintiff asserts that the construction in *Riley* does not cause ambiguity in this case.[52]  But the Court finds *Riley* instructive in addressing how to interpret similar, if not identical, language in the Policy.  Therefore, because "any other person" is juxtaposed against the opening phrase "any insured," and because the word "other" is defined in terms of what it does *not* include, the Court cannot construe the term "any other person" without first construing "any insured."

The Kansas Supreme Court has stated that the word "any" in the term "any insured" is inherently ambiguous.[53]  "Any" can refer to "one," but can also refer to "some."[54]  And in *Catholic Diocese of Dodge City v. Raymer*,[55] the Kansas Court of Appeals adopted a broad definition of "any insured," finding that it referred to "any and all insureds under the policy, not just 'the insured' seeking coverage."[56]  Under Kansas law, then, "any insured" is ambiguous and can range in scope from a single insured to all insureds under a policy.  In construing the meaning of "any other person" opposite "any insured," therefore, it is not immediately clear whether "any other person" includes other insureds or not.

---

[51] *Id.* at 596.

[52] Doc. 17 at 4–5.

[53] *Brumley v. Lee*, 963 P.2d 1224, 1227 (Kan. 1998).

[54] *Id.*

[55] 825 P.2d 1144 (Kan. Ct. App. 1992).

[56] *Id*. at 1148.

Further, as both parties have urged, the Court must interpret the Policy as a whole rather than reading individual provisions in isolation.[57]  The Court must therefore examine other clauses in the Policy and determine whether they have any effect on the disputed language.  Viewing the Policy as a whole, the Court finds that the definition of the term "any insured" in the severability clause further supports a finding of ambiguity.

Under the Policy's severability clause, which begins "[t]his insurance applies separately to each insured," [58] each insured effectively has his or her own policy.[59] Courts are generally split as to whether a severability clause coupled with exclusions applying to "any insured" bars coverage for co-insureds.[60]  More relevant to the present dispute, many courts have also examined whether a severability clause renders the term "any insured" ambiguous.[61]  In Kansas, the controlling precedent on this issue is *Brumley v. Lee*.[62]

In *Brumley*, parents of a four-year-old child brought a wrongful-death claim against a caregiver, David Lee, and his wife after the child suffered fatal injuries in their care.[63]  Lee filed a third-party petition against the insurer of his home, seeking indemnification.[64]  Although Lee's wife inflicted the fatal blow, the child's parents

---

[57] *See Am. Family Mut. Ins. Co. v. Wilkins*, 179 P.3d 1104, 1109 (Kan. 2008) (citation omitted); *O'Bryan v. Columbia Ins. Grp.*, 56 P.3d 789, 792 (Kan. 2002) (citing *Farm Bureau Mut. Ins. Co. v. Horinek*, 660 P.2d 1374 (Kan. 1983)).

[58] Doc. 1, Ex. 3 at 66.

[59] *Brumley v. Lee*, 963 P.2d 1224, 1228 (Kan. 1998).

[60] *See Am. Family. Mut. Ins. Co. v. Bower*, 752 F. Supp. 2d 957, 968–69 (N.D. Ind. 2010) (collecting cases addressing whether a severability clause coupled with exclusions applying to "any insured" bars coverage for co-insureds).

[61] *Id.*

[62] 963 P.2d at 1227.

[63] *Id.* at 1226.

[64] *Id.*

alleged that Lee acted negligently in allowing her to do so.[65]  Lee's insurance policy had

an intentional-act exclusion stating that the policy did not cover bodily injury or property

damage "which [was] expected or intended by *any insured*."[66]  The policy also had a

severability clause, which stated "[t]his insurance applies separately to each insured."[67]

The insurance company argued that coverage was excluded because Lee's wife was "any

insured" and had intentionally harmed the child.[68]  But the child's parents argued that the

severability clause rendered the language "any insured" ambiguous, and the policy should

therefore be construed in favor of coverage.[69]

The Kansas Supreme Court held that the term "any insured" in the policy

exclusion was ambiguous when read with the severability clause because the term

rendered the scope of the exclusion unclear.[70]  Noting that the policy's severability clause

would ordinarily cause the exclusion to apply only against the individual insured for

whom coverage was sought, and in view of its finding that the word "any" was inherently

ambiguous, the court found that the insurance company's attempt to expand the exclusion

by using the term "any insured" rendered the entire clause ambiguous.[71]

Perhaps trying to guard against ambiguity of the kind in *Brumley*, Plaintiff has

explicitly defined the phrase "any insured" in its severability clause:

---

[65] *Id.*

[66] *Id.* at 1227 (emphasis added).

[67] *Id.*

[68] *See id.* at 1226 (noting insurance company's position that coverage was excluded because "the acts causing the bodily injury [to the child] were intentionally inflicted by 'any insured'").

[69] *Id.* at 1227.

[70] *Id.* at 1228.

[71] *Id.* at 1227–28.

> This severability of insurance provision in no way alters or affects any provision of the policy indicating that it applies to "any **insured**". Any limiting or exclusionary provision in the policy indicating that it applies to "any **insured**" means that such limiting or exclusionary provision is applicable as to any **insured** under this policy.  Where **we** use the phrase "any **insured**," **we** intend that such provisions not be limited to any one **insured** and that such provisions are applicable to any **insured** under the policy.[72]

Plaintiff's qualifying language in the severability clause appears to broaden the scope of "any insured" to include *all* insureds under the policy, and to therefore broaden the scope of the Policy's exclusions.  But broadening the scope of "any insured" so that it is not "limited to any one insured" actually narrows the scope of "any other person" in the negligent-entrustment exclusion.  Because "any other person" is juxtaposed against "any insured" in that exclusion, broadening the scope of "any insured" to apparently encompass *all* insureds makes it logical to interpret "any other person" in the exclusion as *not* including anyone insured under the policy.  Because Conner Estrella was insured under the Policy, he is not "any other person," and under this interpretation, the Policy would therefore cover Defendants' claim of negligent entrustment against Benjamin and Suzanne Estrella.

Plaintiff correctly argues that in interpreting the Policy's language, this Court must consider the parties' intent.[73]  Plaintiff further argues that the intent of the Policy is to exclude coverage for negligent entrustment involving a motor vehicle because those claims are covered under a separate motorist policy.[74]  But the Court is not persuaded that even a reasonably prudent insured, from whose perspective the Court views the Policy,

---

[72] Doc. 1, Ex. 3 at 66 (emphasis in original).

[73] Doc. 17 at 3.

[74] *Id*. at 4.

would appreciate that negligent-entrustment claims should be covered by a separate policy. At the very least, this factor does not outweigh the inherent ambiguity of the word "any" and the further confusion created by the severability clause.

The Court therefore concludes that, as viewed from the perspective of a reasonably prudent insured, the exclusion in Section II.1.i(1) is ambiguous and should be construed in Defendants' favor to provide coverage for Defendants' claim of negligent entrustment against Benjamin and Suzanne Estrella. Accordingly, the Court grants Defendants summary judgment as a matter of law on the issue of whether the negligent-entrustment exclusion excludes coverage in this case.

### B.    Motor-Vehicle Exclusion

Plaintiff next argues that even if the negligent-entrustment exclusion does not exclude coverage, the Court should still find coverage excluded by the motor-vehicle exclusion in Section II.1.f of the Policy.[75] Plaintiff acknowledges that Kansas law is against it on this issue.[76] Kansas is among a minority of jurisdictions that look to the theory of liability rather than the cause of the accident in determining whether motor-vehicle exclusions exclude coverage for negligent entrustment.[77] Because the theory of liability for negligent entrustment in auto accidents is based on the negligence of the entruster in supplying the vehicle rather than on the negligence of the driver in causing the accident, motor-vehicle exclusions like the one in the Policy at issue here do not exclude coverage for negligent entrustment in Kansas.[78]

---

[75] Doc. 14 at 17.

[76] *Id.* at 23.

[77] *See, e.g.*, *Marquis v. State Farm Fire & Cas. Co.*, 961 P.2d 1213, 1221 (Kan. 1998).

[78] *See Upland Mut. Ins., Inc. v. Noel*, 519 P.2d 737, 741 (Kan. 1974).

Plaintiff, citing to dissenting opinions from the Kansas Supreme Court on the scope of motor-vehicle exclusions, argues that this case presents an opportunity to overturn Kansas precedent on the issue.[79]  Defendants respond that the Kansas Supreme Court has repeatedly refused to overturn said precedent, which therefore binds this Court in interpreting Kansas law.[80]

This Court is indeed bound by the Kansas Supreme Court's interpretation of Kansas law on this issue, and must therefore determine how the Kansas Supreme Court would likely rule in this situation.[81]  Plaintiff argues that Kansas law is "unsettled" as to whether motor-vehicle exclusions such as the one in the Policy exclude coverage for negligent entrustment.[82]  Contrary to Plaintiff's assertion, however, Kansas law appears quite settled on this issue.  Kansas has adhered to the rule that the theory of liability rather than the cause of the accident governs whether a motor-vehicle exclusion precludes coverage for negligent entrustment at least since *Upland Mutual Insurance, Inc. v. Noel* was decided in 1974, forty-four years ago.[83]  The last time the Kansas Supreme Court addressed the issue in detail was almost fourteen years ago, in *Crist v. Hunan Palace, Inc.*[84]  There, a majority of the court firmly declined to overrule *Upland*, citing reliance on the rule and *stare decisis*.[85]  Plaintiff points to forceful dissenting opinions,[86] but even

---

[79] Doc. 14 at 23.

[80] Doc. 15 at 12.

[81] *See Fagan v. Roberts*, 508 F. App'x 773, 774 (10th Cir. 2013).

[82] Doc. 17 at 6.

[83] 519 P.2d at 741.

[84] 89 P.3d 573 (Kan. 2004).

[85] *Id.* at 580.

[86] Doc. 17 at 6–7.

forceful dissents do not mean that the law is "unsettled."  Rather, a majority of the

Kansas Supreme Court seemed satisfied with the state of the law when it last addressed

the issue.[87]

Given that Plaintiff's legal basis for excluding coverage for negligent entrustment

under the Policy's motor-vehicle exclusion is not recognized by Kansas law, the Court

also grants Defendants summary judgment as a matter of law on that issue.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for

Summary Judgment (Doc. 14) is **DENIED** and Defendants' Motion for Summary

Judgment (Doc. 15) is **GRANTED**.

**IT IS SO ORDERED.**


Dated: February 15, 2018

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT
JUDGE

---

[87] Plaintiff rightly notes that it is within this Court's discretion to certify a question to the Kansas Supreme Court on this issue pursuant to K.S.A. § 60-3201.  *See Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 (1974).  Certification may be invoked when applicable state law is unsettled.  *United States v. Jones*, 512 F. Supp. 2d 1193, 1194 (D. Kan. 2007).  But as Kansas law is settled on this issue, the Court declines to certify the question.